Dear Mr. Broussard:
This office is in receipt of your request for an opinion of the Attorney General in regard to the Bossier Parish Council on Aging. Your questions pertain to the procedure to be used in changing the Articles of Incorporation of the Council, and the applicable statute with regard to term limits and appointments to fill vacancies for the Board of Directors.
You indicate the current Articles of Incorporation do not specify how the articles are to be amended, but the Board Chairman, in an attempt at amending the Articles, had sent out notices of the proposed amendments recommended by the Board to all members on January 7, 1993, and announced a general membership meeting for February 23. The ballots passed out were simply a for or against "the changes in the Charter" without stating the details sought to be changed. Also, the meeting was never called to order to establish a quorum was present and permit a discussion of the proposals. Instead, eligible voters were allowed to sign in, vote and leave between the hours of 2:00 p.m. and 4:00 p.m. Inasmuch as the proposals were defeated there is no question as to the legality of that particular occurrence, but you are concerned about the proper procedure for future plans for amendment to the articles.
Chapter 2 of Title 12 is entitled Nonprofit Corporation Law. Included therein are R.S. 12:237 through 12:238 relative to amendment of articles of incorporation. R.S. 12:237 provides in pertinent part as follows:
 B. If the articles do not stipulate a method of amendment, or do not stipulate in detail the procedure for amendment thereof, an amendment altering the articles may be adopted by two-thirds in interest of the voting members present, at any annual or special meeting of members the notice of which set forth the proposed amendment or a summary of the changes to be made thereby. For purposes of this Subsection, a majority of the members shall constitute a quorum and a quorum must be present at the meeting at which the amendment to the articles is to be considered. The notice of such meeting must be transmitted to the members not less than thirty days prior to the meeting.
* * * * * * * * * * * * * * * * * * * * * *
 E. A corporation, whether or not the articles stipulate a method of amendment, may utilize the procedure established in this subsection if it has been unable to amend its articles either because sufficient voting members are not available to comply with the method of amendment stipulated in its articles, or because two-thirds of the voting members, as required by subsection B, are not available for a meeting for this purpose. The amendment may include ratification of amendments previously attempted, and ratification of acts done pursuant thereto, but no amendment adopted pursuant to this subsection may impair rights, privileges, or tenure of corporate existence.
* * * * * * * * * * * * * * * * * * * * * *
 (2) When a meeting to amend the articles is called, the members shall be given thirty days' written notice thereof. This notice shall describe the amendments proposed, and may be mailed to the members at their last addresses on the records of the corporation. Notice of the meeting shall be given also by advertisement, within thirty days before the meeting, in a daily paper published in the parish in which the corporation is domiciled, if there is such a paper. If no daily paper is published in the parish, notice shall be given by posting the same for thirty days in the principal meeting place of the corporation, if it has such a meeting place, or at the parish courthouse door otherwise.
 (3) At the meeting, the articles may be amended by the vote of two-thirds in interest of the voting members present.
Based upon these statutory provisions it appears clear that a meeting must be called to order and a quorum established at that time to conduct a vote on amendments to the articles of incorporation by the members. The statute repeatedly refers to "meeting" and specifies there be a quorum, and we do not feel individuals dropping in to cast a vote over a two hour period constitutes a "meeting" and fulfills the requirement of a quorum at the commencement of the vote.
We do not find that the details required in the notice is applicable to the actual ballot. However, when there are various proposed changes it would seem more efficient to have the ballot divided so as to vote on each proposed change. This would permit a yes or no vote separately rather than a yes or no vote for the entire proposal whereby all proposed changes are either defeated or passed.
In answering your inquiry as to which Louisiana statute is applicable to term limits and appointments for the Board of the Bossier Council on Aging, we feel attention must be given to various statutes and they must be read together. We recognize that the statutes are not clear in the use of the word "council" in R.S. 46:1601-1606.
R.S. 46:933 creates the Louisiana Executive Board on Aging, and R.S. 46:934 sets forth the powers and duties. In this statute the Executive Board is directed to develop and implement policies and procedures pertaining to the office of elderly affairs, and "shall approve matters of policy and all rules and regulations promulgated by the board or the office which pertain to elderly affairs and voluntary parish councils on aging."
Chapter 16 of Title 46 is applicable to the voluntary council on aging in each parish and sets forth in R.S. 46:1602
the procedure for establishment of the "initial council". We must read the word "council" therein as "board" for the statute provides that the initial application shall set forth the names of the persons who are to serve as members of the "initial council". This obviously does not refer to the entire membership.
That the term "council" means "board" is fortified in the wording of paragraph "B" which directs that each "council" shall be composed of not less that five citizens from the parish and "any vacancy in the membership of a council shall be filled by the remaining members of the council for the remainder of the unexpired term." We do not feel that the general membership of approximately 300 members fills a vacancy, and "council" must mean "board".
We note that paragraph "C" was amended by Act 648 of 1992. By the amendment it is provided that the number of members of each council and the terms of members shall be determined by the council under the general guidelines established by the Office of Elderly Affairs upon review and recommendation by the Louisiana Executive Board on Aging. Again, the word "council" must means "board", and the number and terms will be determined under the guidelines of the Office of Elderly Affairs.
Therefore, while R.S. 46:1603 provides for the election of officers from the membership and that the terms for which they shall serve "shall be determined by the council", the decision of the council in this regard is controlled by the guidelines that are set by the Office of Elderly Affairs upon review and recommendation of the Executive Board on Aging. Thus, there is a range for the number and terms of the officers as decided by the individual parish councils, but it must be within the confines of the guidelines set by the Office of Elderly Affairs as reviewed by the Executive Board on Aging.
With respect to filling vacancies on the Board and for our reasoning to be consistent, we would conclude the legislature has mandated the vacancies be filled by the remaining members of the Board in R.S. 46:1602(B), and the terms limits and appointments must be by the parish council within the guidelines of the Office of Elderly Affairs.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, please do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: BARBARA B. RUTLEDGE Assistant Attorney General
BBR/0549f
cc: Mr. Ken Allemand Mr. C. L. Sanders Mr. Joe Defield Mr. Frank Staton